[Cite as *Fetzer v. Fetzer*, 2014-Ohio-747.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF WAYNE | ) | |

| DEBORAH D. FETZER | C.A. No. 12CA0036 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| RYAN K. FETZER | COURT OF COMMON PLEAS COUNTY OF WAYNE, OHIO |
| Appellant | CASE No. 10-DR-0382 |

DECISION AND JOURNAL ENTRY

Dated: March 3, 2014

MOORE, Presiding Judge.

{¶1} Ryan Fetzer ("Husband") appeals from the judgment of the Wayne County Court of Common Pleas. This Court affirms in part, reverses in part, and remands this matter for further proceedings consistent with this opinion.

I.

{¶2} Husband and Deborah Fetzer ("Wife") were married for approximately eleven years. The parties have two minor children who were born during their marriage. In 2010, Wife filed a complaint for divorce, and Husband filed a counterclaim for divorce. The trial court issued a temporary order that included a requirement that Husband pay a temporary child support obligation. Thereafter, Wife filed a motion asking that Husband be found in contempt based, in part, on his failure to pay temporary support as had been ordered. The magistrate issued an order finding Husband in contempt for violating the temporary support order, but reserving a ruling on

the sanction until the final divorce hearing. Husband then filed a motion to reduce his temporary child support obligation.

{¶3} In 2012, the magistrate held the final divorce hearing and issued a magistrate's decision, which included a denial of Husband's motion to reduce the temporary support, and a sanction against Husband consisting of a suspended thirty-day jail sentence on the contempt finding. Both Husband and Wife filed objections to the magistrate's decision. On June 6, 2012, the trial court overruled all of Husband's objections, and issued a decree of divorce.[1] On July 3, 2012, Husband appealed from the decree of divorce, and he now raises ten assignments of error for our review. We have consolidated certain assignments of error to facilitate our discussion.

II.

{¶4} Initially, we note that, in Husband's merit brief, he has not plainly stated the standards of review applicable to his assignments of error. For clarity, we note that the decree of divorce from which Husband appealed resulted from the trial court's adoption of a magistrate's decision. Generally, "the decision to adopt, reject, or modify a magistrate's decision lies within the discretion of the trial court and should not be reversed on appeal absent an abuse of discretion." *Barlow v. Barlow*, 9th Dist. Wayne No. 08CA0055, 2009-Ohio-3788, ¶ 5. However, "we consider the trial court's action with reference to the nature of the underlying matter." *Tabatabai v. Tabatabai*, 9th Dist. Medina No. 08CA0049-M, 2009-Ohio-3139, ¶ 18. The standards of review applicable to the underlying matters challenged by Husband are identified in our respective discussions of Husband's assignments of error.

---

[1] On June 20, 2012, the trial court issued a nunc pro tunc decree in which it corrected the date referenced in the decree as to when the magistrate issued his decision.

**ASSIGNMENT OF ERROR I**

THE TRIAL COURT ERRED IN ITS FINDING THAT [WIFE]'S APPRAISER PROPERLY VALUED THE RESIDENCE LOCATED AT 1635 W. MORELAND ROAD, WOOSTER, OHIO AS IT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND CONTRARY TO LAW.

{¶5} In his first assignment of error, Husband argues that the trial court erred in accepting Wife's appraiser's valuation of the marital residence, where the appraisal report consisted of inadmissible hearsay, and the appraiser was not certified. We agree with Husband to the extent that he argues the trial court erred in adopting the magistrate's decision as to the valuation of the marital residence, because the appraisal on which the valuation was based amounted to inadmissible hearsay, and no valid stipulation to the admissibility of this document can be discerned from the record.

{¶6} "A trial court has broad discretion in the admission of evidence, and an appellate court should not disturb the trial court's ruling unless it has clearly abused its discretion and the party has been materially prejudiced thereby." *Prakash v. Copley Tp. Trustees*, 9th Dist. Summit No. 21057, 2003-Ohio-642, ¶ 28, citing *State v. King*, 9th Dist. Medina No. 2963-M, 2000 WL 697454, * 3 (May 31, 2000). An abuse of discretion connotes a decision that is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶7} Husband challenged the admission of the document at issue here as amounting to hearsay. "Hearsay is a statement, oral or written, made by someone other than the declarant while testifying, which is offered to prove the truth of the matter asserted in the statement." *Prakash* at ¶ 29, citing Evid.R. 801(A) and (C). "Hearsay is not admissible unless otherwise allowed by rule, statute or constitutional provision." *Prakash* at ¶ 29, citing Evid.R. 802.

{¶8} At the final hearing in this matter, Wife identified an appraisal of the marital residence that had been performed by an individual who did not testify in court. Wife did not

state her opinion as to the value of the property, nor did she further testify as to the appraisal. At the close of Wife's case, she moved to admit the appraisal into evidence. Husband objected to its admission on the grounds that Wife's appraiser did not testify in court. The trial court overruled Husband's objection and allowed the appraisal into evidence as Exhibit E.

{¶9} Our review of Exhibit E demonstrates that Wife's appraisal report constituted hearsay. The appraisal was a written statement made by an appraiser, who did not testify at trial, which was submitted to prove the value of the home. In response to Husband's objection to the document at trial, Wife advanced no rule or statute which allowed its admission. The magistrate clearly relied upon Wife's appraiser's report in determining the value of the home, and the trial court adopted the magistrate's decision on valuation. The magistrate chose the appraisal value submitted by Wife's appraiser after concluding that Husband's appraiser's valuation was not reliable.

{¶10} However, at trial, Wife's counsel advised the court that Husband's former attorney had agreed to utilize this appraisal in valuing the marital property, but Husband's counsel indicated that she was not aware of any such agreement. Wife's counsel then produced unsigned letters, as part of her Exhibit X, which Wife's counsel claimed evidenced this agreement. Wife's counsel further explained that, after a status hearing, Husband's former counsel advised that he was unfamiliar with appraisers in the area, and agreed to utilize the services of Wife's appraiser and to split the cost of the appraisal. Following this discussion, the Magistrate admitted Exhibit X into evidence, but indicated that Exhibit X was "merely [Wife's] exhibit as to what her costs are for appraisal fees."

{¶11} Assuming without deciding that Husband's former counsel agreed to an appraisal of the home by Wife's appraiser, a review of the record does not reveal an agreement between

the parties to utilize *only* Wife's appraiser's valuation of the marital residence, nor does it evidence a stipulation to the admissibility of the appraiser's report absent testimony. In a magistrate's order following a pretrial held on June 13, 2011, the magistrate noted that "[t]he real estate has been appraised and the parties will discuss whether or not the report can be submitted without testimony." Nothing in the record following this statement indicates an agreement by the parties to allow admission of the appraisal report absent Wife's appraiser's testimony.

{¶12} Accordingly, we conclude that the trial court abused its discretion in adopting the magistrate's decision which relied on inadmissible hearsay, over objection and without agreement as to its admissibility, in determining the value of the marital residence. To that extent, Husband's first assignment of error is sustained.

{¶13} Husband further argues that the trial court erred in utilizing the appraisal of a non-certified appraiser over the value presented by a certified appraiser. Having concluded that the trial court erred in relying on Wife's appraisal which was improperly admitted into evidence, we do not reach the issue concerning accreditation of the competing appraisers.

{¶14} Accordingly, Husband's first assignment of error is sustained.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED WHEREIN IT FAILED TO FIND THAT THE 1999 DODGE RAM WAS A BUSINESS ASSET AND THAT THE HARLEY MOTORCYCLE AND HONDA MOTORCYCLE WERE PREMARITAL ASSETS OF [HUSBAND] AS IT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND CONTRARY TO THE LAW.

{¶15} In his second assignment of error, Husband argues that the trial court erred in determining that the 1999 Dodge Ram, Harley Davidson Motorcycle, and Honda motorcycle were marital property. We disagree.

{¶16} In the magistrate's decision, the magistrate found that there were "various motor vehicles that were appraised in the personal property appraisal," although there was no testimony as to the vehicles. The magistrate then referenced an exhibit which indicated that that Husband had various vehicles in his possession, including a 1999 Dodge Ram valued at $3,650, a 1976 Harley Davidson motorcycle worth $3,500, and a 1971 Honda motorcycle valued at $600.

{¶17} In regard to the 1999 Dodge Ram, Husband maintains that the truck was included in the calculation by the trial court as a personal asset and as a business asset, and should be eliminated from one of the calculations. At the final hearing, Husband submitted a balance sheet for Fetzer Brothers, Inc., of which Husband and his brother were the sole shareholders. The balance sheet includes "[v]ehicles" as assets of the business. However, no particular vehicles are referenced on the balance sheet. Thus, we cannot discern from the evidence whether the 1999 Dodge Ram truck referenced in Husband's personal property appraisal is included the valuation of "[v]ehicles" in the assets of Fetzer Brothers' balance sheet, and Husband directs this Court to nothing in the record from which we could make such a determination. Further, in regard to the motorcycles, Husband maintains that the motorcycles were premarital assets, but again he references no portion of the record as to where the testimony or evidence regarding this issue may be found.

{¶18} This Court "may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required under App.R. 16(A)." App.R. 12(A)(2). Pursuant to App.R. 16(A)(7), an appellant must include in his brief, "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for

review and the reasons in support of the contentions, with citations to the authorities, statutes, *and parts of the record on which appellant relies*." (Emphasis added.)

{¶19} Based upon Husband's failure to appropriately direct this Court to portions of the record in support of his argument, we decline to address Husband's second assignment of error. *See* App.R. 12(A)(2) and 16(A)(7). Accordingly, Husband's second assignment of error is overruled.

## ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED WHEREIN IT FOUND THAT [WIFE] HAD A SEPARATE PROPERTY CLAIM IN THE AMOUNT OF $16,493[ ]FROM AN ACCOUNT PREVIOUSLY HELD AT WAYNE SAVINGS AND LOAN AS IT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND CONTRARY TO LAW.

{¶20} In his third assignment of error, Husband maintains that the trial court erred in adopting the magistrate's decision to the extent that the magistrate determined that the amount of $16,493 in a savings account held by Wife consisted of her separate property. We agree.

{¶21} "The classification of property as marital or separate is a question of fact that this Court reviews under a civil manifest weight standard." *Hahn v. Hahn*, 9th Dist. Medina No. 11CA0064-M, 2012-Ohio-2001, ¶ 20, citing *Louis v. Louis*, 9th Dist. Wayne No. 10CA0047, 2011-Ohio-4463, ¶ 4. When reviewing the manifest weight of the evidence in civil matters, as in criminal matters:

> The [reviewing] court * * * weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.

(Internal quotations omitted.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20.

**{¶22}** R.C. 3105.171(B) provides that, in a divorce proceeding, the trial court must classify the parties' property as either marital property or separate property, after which it must divide the property equitably. R.C. 3105.171(A)(3)(a) provides:

> "Marital property" means, subject to division (A)(3)(b) of this section, all of the following:
>
> (i) All real and personal property that currently is owned by either or both of the spouses * * * and that was acquired by either or both of the spouses during the marriage[.]
>
> * * *

**{¶23}** R.C. 3105.171(A)(6)(a) defines "separate property," and provides, in pertinent part, as follows:

> "Separate property" means all real and personal property and any interest in real or personal property that is found by the court to be any of the following:
>
> * * *
>
> (ii) Any real or personal property or interest in real or personal property that was acquired by one spouse prior to the date of the marriage[.]

**{¶24}** "The commingling of separate property with other property of any type does not destroy the identity of the separate property as separate property, except when the separate property is not traceable." R.C. 3105.171(A)(6)(b). "The party seeking to have a particular asset classified as separate property has the burden of proof, by a preponderance of the evidence, to trace the asset to separate property." *Eikenberry v. Eikenberry*, 9th Dist. Wayne No. 09CA0035, 2010-Ohio-2944, ¶ 19, citing *West v. West*, 9th Dist. Wayne No. 01CA0045, 2002 WL 01CA0045, *5 (Mar. 13, 2002). "Accordingly, traceability is the issue when determining whether separate property remains separate property once it has been commingled with marital property." *Bucalo v. Bucalo*, 9th Dist. Medina No. 05CA0011-M, 2005-Ohio-6319, ¶ 13, citing *Wheeler v. Wheeler*, 9th Dist. Medina No. 3188-M, 2001 WL 1581574, *6 (Dec. 12, 2001).

{¶25} Here, trial court determined that the duration of the parties' marriage was from September 29, 2000 until April 1, 2011. Wife testified, and Husband does not dispute, that she opened a savings account at Wayne Savings Community Bank prior to the marriage. At the final hearing, Wife submitted a letter from the bank indicating that $16,492.96 was in this account on December 31, 2000. Wife testified that she added Husband's name to the Wayne Savings account at Husband's request after marriage. The parties then utilized the account for marital funds and expenses. When the parties separated, Wife took the approximate $17,000 balance in the account and opened a new account with it and another $5,000 at PNC Bank. As of December 27, 2011, there was $16,405 in the PNC account.

{¶26} On cross-examination, Wife testified that she could not remember when she added Husband's name to the Wayne Savings account, but maintained that she contributed the money to the account that was on deposit prior to marriage. After she added Husband to the account, Wife affirmed that the money deposited came from both parties, and the money withdrawn was for the benefit both parties. Wife submitted copies of the passbook transactions into evidence. The copies of the passbook pages display deposit and withdrawal amounts, with their corresponding dates, from February 9, 1999 through September 27, 2008.

{¶27} After reviewing the evidence and testimony, we agree with Husband that the weight of the evidence does not demonstrate that Wife met her burden of tracing her premarital moneys that had been commingled with the marital funds. The bank records submitted into evidence neither indicate the source of deposits, nor the purpose of withdrawals, and Wife did not testify as to the source of deposits or the nature of withdrawals after marriage. The passbook entries demonstrate that over $30,000 in aggregate withdrawals, and over $17,000 in aggregate deposits, were made to this account just within the parties' first four years of marriage. There is

no indication in the record for what the withdrawals were used or from where the deposits came. *See Wohleber v. Wohleber*, 9th Dist. Lorain No. 08CA009402, 2009-Ohio-995, ¶ 12-13.

{¶28} Based upon the lack of evidence tracing Wife's premarital funds that the parties both acknowledge were commingled with marital funds, we conclude that the trial court erred in adopting the magistrate's determination that $16,493 of the PNC account consisted of Wife's separate property. Accordingly, we sustain Husband's third assignment of error to this extent.

{¶29} Husband has further argued that, if we were to conclude that the trial court did not err in determining that this portion of the PNC account was premarital, Wife converted it into marital property by way of gift. Because we have concluded that Wife failed to meet her burden of tracing her purported premarital funds, we do not reach Husband's argument pertaining to the alleged gifting of the money.

### ASSIGNMENT OF ERROR IV

> THE TRIAL COURT ERRED WHEREIN IT AWARDED [WIFE] ALL ITEMS OF PERSONAL PROPERTY BELONGING TO THE CHILDREN AS IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, CONTRARY TO THE LAW AND CONTRARY TO THE BEST INTERESTS OF THE MINOR CHILDREN.

{¶30} In his fourth assignment of error, Husband argues that the trial court erred in awarding Wife property belonging to the parties' children.

{¶31} In his brief argument in support of this assignment of error, Husband cites no legal authority, and he makes no references to the record. "If an argument exists that can support this assignment of error, it is not this court's duty to root it out." *Cardone v. Cardone*, 9th Dist. Summit No. 18349, 1998 WL 224934, *8 (May 6, 1998).

{¶32} Based upon Husband's failure to adequately develop this argument with citations to authority and portions of the record in support of his argument, we decline to address it. *See* App.R. 12(A)(2) and 16(A)(7).

**ASSIGNMENT OF ERROR V**

THE TRIAL COURT ERRED WHEREIN IT FOUND THE VALUE OF FETZER BROTHERS MECHANICAL CORPORATION TO BE $278,720[ ]AS IT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND CONTRARY TO THE LAW. ADDITIONALLY FACTORING THE ENTIRE FRITO LAY CHECK INTO THE TOTAL ASSET VALUE OF FETZER BROTHER MECHANICAL CORPORATION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND CONTRARY TO THE LAW. MOREOVER THE TRIAL COURT ERRED WHEREIN IT FAILED TO ALLOCATE FINANCIAL RESPONSIBILITY FOR THE DEBT OWED BY [WIFE] AND [HUSBAND] TO FETZER BROTHERS MECHANICAL CORPORATION IN THE AMOUNT OF $58,000[ ]AS IT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND CONTRARY TO THE LAW.

{¶33} In his fifth assignment of error, Husband argues that the trial court erred in adopting the magistrate's decision in valuing Fetzer Brothers and in failing to include in the parties' marital liabilities a debt owed to this business. We agree.

{¶34} A trial court has discretion in determining how to value a marital asset. *Sergi v. Sergi*, 9th Dist. Summit No. 17476, 1996 WL 425914, *4 (July 31, 1996). Therefore, we will not reverse a trial court's determination of value absent an abuse of discretion, meaning that the court was unreasonable, arbitrary or unconscionable in its ruling. *Id.*; *Blakemore*, 5 Ohio St.3d at 219. *See also Zaccardelli v. Zaccardelli*, 9th Dist. Summit No. 26262, 2013-Ohio-1878, ¶ 26.

{¶35} As set forth in our discussion of Husband's third assignment of error, marital property generally includes property acquired by either spouse "during the marriage." R.C. 3105.171(A)(3)(a). "During the marriage" generally means "the period of time from the date of the marriage through the date of the final hearing * * *." R.C. 3105.171(A)(2)(a). "If the court selects dates that it considers equitable in determining marital property, 'during the marriage'

means the period of time between those dates selected and specified by the court." R.C. 3105.171(A)(2)(b).

{¶36} Here, the trial court determined that the duration of the parties' marriage was from September 29, 2000 until April 1, 2011, and neither party challenges this determination. However, in valuing Husband's business, the trial court utilized a balance sheet submitted by Husband, which was created on December 31, 2011, which included, as a business asset, a check received from Frito Lay in December of 2011 in the amount of $163,015.04. Neither party submitted evidence as to the value of the business on April 1, 2011.

{¶37} In valuing the business, the magistrate utilized the difference between assets and liabilities as listed on the balance sheet. The magistrate noted that "[Husband] must surely be aware that [Wife] is going to try and show the value of this corporation is very high. It would have been in [Husband]'s best interest to have the corporation evaluated by a professional."

{¶38} Our review of the evidence in the record demonstrates that the business clearly received the Frito Lay check well past the date chosen as the termination of the parties' marriage. There is nothing in the record establishing the value of the business on or around April 1, 2011. Although the trial court appeared to acknowledge that it lacked an appropriate valuation of the business due to the failure of the parties to provide evidence of valuation, this Court has held that "[a] party's failure to put on any evidence does not permit assigning an unknown as value. The court itself should instruct the parties to submit evidence on the matter." *Zona v. Zona*, 9th Dist. Medina No. 05CA0007-M, 2005-Ohio-5194, ¶ 6, quoting *Willis v. Willis*, 19 Ohio App.3d 45, 48 (11th Dist.1984). Accordingly, to the extent that Husband argues that the trial court erred in valuing the business, his fifth assignment of error is sustained.

{¶39} In regard to the purported debt owed by the parties to the business, the balance sheet indicates that, included as an asset of the business, were loans due from Husband and his brother. At trial, the accountant retained by Fetzer Brothers testified that there had been an accounting error in preparation of the business tax forms for the year 2007. As a result of the error, the business paid Husband and his brother too much in 2007 through 2010. Eventually, the overpayments created a negative balance in the business' basis, and the business treated this negative balance as loans to Husband and his brother. The accountant testified that as of "the end of 2010," Husband's loan balance was $58,000. His brother's loan balance was $84,000.

{¶40} These loans appear to be included in the corporation's total assets on the balance sheet, which lists an $89,943 loan associated with Husband's brother, and a $65,890 loan associated with Husband. We agree with Husband to the extent that, if such loans are to be included in the value of the business, it would seem that the corresponding personal obligation should be included in calculation of the parties' marital debt. However, as set forth above, no valuation of the business as of the date of termination of the marriage appears in the record. Likewise, no indication of the amount of the personal debt to the business as of the date of the termination of marriage is apparent from the record. Thus, the trial court should consider this matter further on remand.

{¶41} Accordingly, Husband's fifth assignment of error is sustained.

### ASSIGNMENT OF ERROR VI

THE TRIAL COURT ERRED IN ADOPTING THE MAGISTRATE'S REPORT AND RECOMMENDATION WHEREIN HE STATED THAT HE USED [HUSBAND]'S 2010 INCOME FOR PURPOSES OF CALCULATING CHILD SUPPORT; HOWEVER, THE CALCULATION PROVIDES INCOME OF $67,388[ ]FOR [HUSBAND]. [HUSBAND]'S 2010 JOINT TAX RETURN PROVIDES INCOME OF $62,605[]. SAID CALCULATION IS NOT BASED UPON [HUSBAND]'S ACTUAL 2010 INCOME, AND THEREFORE IT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND

CONTRARY TO THE LAW. [HUSBAND]'S 2011 INCOME SHOULD HAVE BEEN USED IN THE CHILD SUPPORT CALCULATION. THE TRIAL COURT ALSO ERRED WHEN IT DENIED [HUSBAND]'S PENDING MOTION TO REDUCE TEMPORARY CHILD SUPPORT AS IT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND CONTRARY TO LAW.

LASTLY, THE TRIAL COURT ERRED WHEREIN [HUSBAND] WAS SENTENCED TO A SUSPENDED SENTENCE OF THIRTY DAYS IN JAIL AS A SANCTION FOR HIS PRIOR FINDING OF CONTEMPT AS IT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND CONTRARY TO THE LAW.

{¶42} In his sixth assignment of error, Husband argues that the trial court erred in determining his child support obligation because it used an incorrect income figure in its calculation. Husband next argues that the trial court erred in denying his motion to reduce his temporary child support order. Husband further argues that the trial court erred in sentencing him to a suspended jail sentence as a sanction for contempt.

{¶43} Husband has essentially set forth three assignments of error in his sixth assignment of error. Therefore, Husband has failed to separately argue error, as required by App.R. 16(A)(7). *See also* App.R. 12(A)(2). Nonetheless, we will separately review Husband's arguments.

Husband's Income for Child Support

{¶44} In regard to Husband's argument pertaining to the amount of child support ordered in the decree, "[w]e review matters involving child support under the abuse-of-discretion standard." *DeJesus v. DeJesus*, 170 Ohio App.3d 307, 2007-Ohio-678, ¶ 7 (9th Dist.). Accordingly, we will not reverse a trial court's decision on child support unless it is "unreasonable, arbitrary, or unconscionable in its ruling." *Blakemore*, 5 Ohio St.3d at 219.

**{¶45}** The provisions of R.C. 3119.01, et seq., govern the trial court's calculation of child support.[2] Pursuant to R.C. 3119.01(C)(7), gross income is "the total of all earned and unearned income from all sources during a calendar year[.]"

**{¶46}** Husband first argues that the trial court erred in utilizing his 2010 gross income to determine child support instead of his 2011 gross income, which he testified amounted to $45,901.20, in determining his child support obligation. However, Husband does not further develop this argument. It is not this Court's duty to make an argument on Husband's behalf, and we decline to do so here. *See Cardone*, 1998 WL 224934, at *8.

**{¶47}** Husband next argues that, even if the trial court did not err in utilizing his 2010 income, it used an inaccurate income figure for that year. In its calculation, the trial court utilized the figure of $67,388 as Husband's income. Husband argues that the trial court should have used his actual 2010 income of $62,605. In support, Husband maintains that his 2010 tax filing that he submitted as Exhibit 1 at the final hearing establishes that his 2010 earnings were $62,605.

**{¶48}** Husband's Exhibit 1 contains the parties' joint income tax filings and Fetzer Brothers' tax filings for the year 2010. On the parties' joint income tax filing, the gross income of the parties is calculated at $67,388. From this filing, we cannot discern where Husband's purported "actual" income of $62,605 is reflected, nor has Husband offered us any guidance in his brief as to how he calculated this amount.

---

[2] In Husband's brief, he cites R.C. 3115.215 as applicable to child support calculations. However, R.C. 3113.215 was repealed and replaced by R.C. 3119.01, et seq., effective March 22, 2001.

{¶49} Accordingly, to the extent that Husband argues that the trial court erred in utilizing an incorrect income figure in determining his child support obligation, his assignment of error is overruled.

Temporary Child Support

{¶50} In regard to Husband's argument pertaining to the temporary order, on September 13, 2010, the trial court temporarily set Husband's child support obligation at $1,817 per month, utilizing an income of $150,000 for Husband and attributing no income to Wife, pursuant to a worksheet submitted by Wife. On January 14, 2011, the trial court modified Husband's temporary child support obligation to $1,662 per month. In calculating this amount, the trial court again used $150,000 as Husband's income, but imputed minimum wage earnings to Wife, and made adjustments to local tax credits. On December 12, 2011, Husband moved to modify the temporary support order. The trial court did not rule on the motion prior to the magistrate's decision resulting from the final hearing. In the decision, the magistrate recommended, and the trial court adopted, that child support be set at $859 per month with private health care or $809 per month without private health care together with a cash medical payment of $157 per month.

{¶51} Although Husband frames his argument on this point in terms that the trial court erred in failing to reduce his temporary child support obligation, his argument in support presupposes that the trial court essentially granted his motion to reduce temporary support by way of ordering a lower amount of child support in the decree. From that premise, he argues that the trial court erred in failing to retroactively apply the lower child support obligation to the date he requested a modification of his temporary support order.

{¶52} In support, Husband cites the Tenth District case of *Murphy v. Murphy*, 13 Ohio App.3d 388 (10th Dist.1984). In *Murphy*, the Tenth District stated:

> * * * the parties are entitled to have the order of the trial court relate back to the date upon which the motion for a modification of child support was filed. Any other holding could produce an inequitable result in view of the substantial time it frequently takes to dispose of motions to modify child support obligations. * * *

*Id.* at 389. This Court adopted the holding of *Murphy* in *Carson v. Carson*, 9th Dist. Summit No. 14023, 1989 WL 77214, *1 (July 12, 1989). Based upon the rationale advanced in *Murphy*, in *State ex rel. Draiss v. Draiss*, 70 Ohio App.3d 418, 421 (9th Dist.1990), this Court held that "absent some special circumstance, an order of a trial court modifying child support should be retroactive to the date such modification was first requested."

{¶53} However, the cases cited by Husband apply this rationale to modifications made subsequent to a final support order being issued. *See Murphy* at 388, and *Draiss* at 418-419 (reviewing post-decree orders modifying support). Here, there was no modification to a final support order. Instead, the trial court denied Husband's motion to decrease support, but it modified the child support obligation contained in the temporary order, which was provisional in nature and subject to modification at any time. *See Polacheck v. Polacheck*, 9th Dist. Medina Nos. 26551, 26552, 2013-Ohio-5788, ¶ 42. Husband has directed us to no cases which apply the holdings of *Murphy* and *Draiss* to modifications of temporary support orders.

{¶54} Therefore, to the extent that Husband argues that the trial court erred in failing to retroactively modify support, his sixth assignment of error is overruled.

Contempt

{¶55} Husband next maintains that the trial court erred in finding him in contempt for his failure to pay temporary child support. The entirety of Husband's argument in support of this contention consists of the following:

> Given the child support history in this matter and the erroneous obligation that [Husband] has been paying on since January 2011, he should not be penalized with a finding of contempt or suspended jail sanction.

[Husband] should be alleviated from his suspended sentence as he has been paying an inflated obligation throughout these proceedings.

{¶56} Again, Husband has failed to develop an argument with citations to the record and to the authority in support of his argument. *See* App.R. 12(A)(2) and 16(A)(7). Moreover, Husband's argument appears entirely predicated upon our finding of error in regard to his challenges to the child support calculation as set forth above. As we have not found such error, this portion of his sixth assignment of error is likewise overruled.

{¶57} Accordingly, Husband's sixth assignment of error is overruled.

### ASSIGNMENT OF ERROR VII

THE TRIAL COURT ERRED WHEREIN IT ALLOCATED THE TAX DEPENDENCY EXEMPTIONS FOR THE MINOR CHILDREN TO [WIFE] AS IT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND CONTRARY TO THE LAW.

### ASSIGNMENT OF ERROR VIII

THE TRIAL COURT ERRED WHEREIN IT AWARDED [WIFE] SPOUSAL SUPPORT IN THE AMOUNT OF $500[ ]PER MONTH FOR A PERIOD OF THIRTY-SIX MONTHS, FAILED TO INCLUDE TERMINATION OF SPOUSAL SUPPORT IF [WIFE] COHABITATES WITH ANOTHER MALE AND THEN FAILED TO RETAIN JURISDICTION OVER SPOUSAL SUPPORT AS IT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND CONTRARY TO THE LAW.

### ASSIGNMENT OF ERROR IX

THE TRIAL COURT ERRED WHEREIN IT STATED THAT [HUSBAND] OWED [WIFE] A PROPERTY DIVISION OF $115,993[] WITHIN 60 DAYS OF THE JOURNALIZATION OF THE DECREE AND AWARDED THE ENTIRE 2010 TAX REFUND TO [WIFE] AS IT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND CONTRARY TO THE LAW.

### ASSIGNMENT OF ERROR X

THE TRIAL COURT ERRED WHEREIN IT STATED THAT [HUSBAND] OWES [WIFE] LITIGATION COSTS OF $1,546[] WITHIN 14 DAYS OF THE JOURNALIZATION OF THE DECREE IS [SIC.] AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND CONTRARY TO THE LAW. MOREOVER THE TRIAL COURT ERRED WHEREIN IT AWARDED

[WIFE]'S REQUEST FOR ATTORNEY FEES IN THE AMOUNT OF $15,000[] TO BE PAID WITHIN 60 DAYS OF THE JOURNALIZATION OF THE DECREE IS [SIC.] AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND CONTRARY TO THE LAW.

{¶58} In his seventh assignment of error, Husband maintains that the trial court erred when it allocated the child tax dependency exemptions to Wife. In his eighth assignment of error, Husband argues that the trial court erred in its determination of the amount and duration of spousal support and by failing to retain jurisdiction over spousal support. In his ninth assignment of error, Husband argues that, based upon his previous assignments of error, the trial court erred in ordering him to pay a property division payment to Wife. In his tenth assignment of error, Husband argues that the trial court erred in ordering him to pay the costs of the action and Wife's attorney fees. For ease of discussion, we will address the assignments of error together, but out of order.

{¶59} Because we sustained Husband's first, third, and fifth assignments of error, this matter will be remanded for the trial court to determine a value for the business and the marital residence, and to include Wife's PNC account balance as marital property. Accordingly, we decline to address Husband's ninth assignment of error pertaining to the property division payment, as it is premature.

{¶60} Further, "[i]n determining whether spousal support is appropriate and reasonable, the court must consider, among other factors, '[t]he relative assets and liabilities of the parties * * *.'" *Braidy v. Braidy*, 9th Dist. Summit No. 26608, 2013-Ohio-5304, ¶ 16, quoting R.C. 3105.18(C)(1)(i). Accordingly, based upon our resolution of Husband's first, third, and fifth assignments of error, his argument pertaining to spousal support is also premature, and we decline to address it. *See id.*

{¶61} In regard to the child tax dependency exemptions, pursuant to R.C. 3119.82, "[w]henever a court issues * * * a child support order, it shall designate which parent may claim the children who are the subject of the court child support order as dependents for federal income tax purposes* * *." In allocating the tax dependency exemptions, the trial court must consider R.C. 3119.82, which provides, in relevant part:

> In cases in which the parties do not agree which parent may claim the children as dependents, the court shall consider, in making its determination, any net tax savings, the relative financial circumstances and needs of the parents and children, the amount of time the children spend with each parent, the eligibility of either or both parents for the federal earned income tax credit or other state or federal tax credit, and any other relevant factor concerning the best interest of the children.

{¶62} An award of spousal support is a factor that may be considered in making this determination. *See Geschke v. Geschke*, 9th Dist. Medina No. 3266-M, 2002-Ohio-5426, ¶ 33. Because we have declined to address Husband's argument pertaining to spousal support as premature, we likewise decline to address his argument pertaining to allocation of the tax dependency exemptions, as it is likewise premature.

{¶63} Last, in regard to Husband's argument pertaining to costs and attorney's fees, R.C. 3105.73(A) provides that "[i]n an action for divorce * * *, a court may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable. In determining whether an award is equitable, the court may consider the parties' marital assets and income, any award of temporary spousal support, the conduct of the parties, and any other relevant factors the court deems appropriate."[3] Here, because our disposition of Husband's first, third, and fifth assignments of error will require the trial court to reassess the

---

[3] In his merit brief, Husband quotes R.C. 3105.73(B) as providing the standard for an award of attorney's fees and expenses. However, this subsection applies to attorney fees awarded in post-decree proceedings.

property division, this may affect the trial court's determination regarding its allocation of costs and attorney fees. Therefore, we likewise decline to address Husband's tenth assignment of error, as it too is premature.

### III.

**{¶64}** Husband's first, third, and fifth assignments of error are sustained. Husband's second, fourth, and sixth assignments of error are overruled. We decline to address Husband's seventh, eighth, ninth, and tenth assignments of error, as they are not yet ripe for review. The judgment of the trial court is affirmed in part, reversed in part, and this matter is remanded to the trial court for further proceedings consistent with this opinion.

Affirmed in part,
reversed in part,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

CARLA MOORE
FOR THE COURT

WHITMORE, J.
HENSAL, J.
CONCUR.

APPEARANCES:

ROSANNE K. SHRINER, Attorney at Law, for Appellant.

RENEE J. JACKWOOD, Attorney at Law, for Appellee.

MICHAEL SENGER, Guardian ad litem.