[Cite as *Cherconis v. Cherconis*, 2016-Ohio-1140.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

DAVID M. CHERCONIS

    Appellant

    v.

CAROLINE CHERCONIS

    Appellee

C.A. No.    14CA0086-M
             14CA0088-M

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF MEDINA, OHIO
CASE No.    13DR0036

DECISION AND JOURNAL ENTRY

Dated: March 21, 2016

MOORE, Judge.

{¶1} David M. Cherconis ("Husband") appeals from the judgment of the Medina County Court of Common Pleas, Division of Domestic Relations. This Court affirms in part, reverses in part, and remands this matter for further proceedings consistent with this decision.

I.

{¶2} Husband and Caroline Cherconis ("Wife") originally were married on July 21, 1984. Four children were born to the Cherconises during their marriage, the oldest three of whom are now emancipated. In 2007, the parties divorced. In the 2007 divorce decree, the trial court awarded Husband the marital residence, ordered him liable for the associated mortgage debt, and ordered that he pay Wife $29,000 as her share of the equity in the marital residence. The decree further provided that Wife could reside in the marital home until Husband tendered her equity payment, and that, if she chose to remain in the marital home, Husband would be credited rent at the rate of $719.89 per month.

{¶3} Subsequent to the 2007 decree, Wife continued to reside in the marital residence. Thereafter, Husband returned to reside with Wife at the marital residence, and, in October of 2010, Husband and Wife remarried. However, in July of 2011, the parties separated, and they have since lived apart. In June of 2012, the first mortgagee on the marital property filed suit seeking to foreclose. Thereafter, Husband's sister, Randi J. Schneider, obtained a personal loan and paid off the mortgage balance on the home in the amount of $38,550. In 2013, Husband filed a complaint for divorce. After filing for divorce, Husband quitclaimed his interest in the marital residence to Ms. Schneider. Thereafter, the trial court joined Ms. Schneider as a party to the action upon Wife's motion.

{¶4} The case proceeded to a final contested hearing, where the 2007 divorce decree was admitted as an exhibit. On August 25, 2014, the trial court issued the second divorce decree. Husband appealed from the decree, and he now presents three assignments of error for our review. We have re-ordered the assignments of error to facilitate our discussion.

II.

## ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION   BY FAILING TO DETERMINE THAT []HUSBAND WAS ENTITLED TO PAYMENT OR SET-OFF FROM []WIFE DUE TO SEVERE PROPERTY DAMAGE OR WASTE TO HIS MOTOR VEHICLE WHICH THE TRIAL COURT ORDERED TO BE RETURNED TO []HUSBAND, WHILE SAID VEHICLE WAS IN HER POSSESSION, AND BY FURTHER ORDERING []HUSBAND TO PAY []WIFE HALF OF THE REMAINING VALUE OF THAT SEVERELY DAMAGED MOTOR VEHICLE.

{¶5} In his third assignment of error, Husband argues that the trial court abused its discretion in failing to credit Husband for damage to his car and by ordering him to pay Wife $300 for one-half of the value of the car. We disagree.

{¶6} "A trial court has broad discretion in making divisions of property in domestic cases." *Budd v. Budd*, 9th Dist. Summit No. 26132, 2013-Ohio-2170, ¶ 8, quoting *Hines v. Hines-Ramsier*, 9th Dist. No. 09CA0022, 2010-Ohio-2996, ¶ 4. "Therefore, we will not reverse a trial court's decision regarding the division of property, absent an abuse of discretion." *Sigman v. Sigman*, 9th Dist. Wayne No. 11CA0012, 2012-Ohio-5433, ¶ 5, citing *Briganti v. Briganti*, 9 Ohio St.3d 220, 222 (1984). The term "abuse of discretion" connotes "that the trial court's attitude [was] unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶7} Here, the trial court concluded that the parties purchased a 1995 Crown Victoria for $1,500 when they remarried in 2010. Thereafter, when the parties separated, Wife had possession of the vehicle. Husband regained possession of the vehicle in 2013, and he claimed that the car suffered damage while it was in Wife's possession. At the final hearing, Husband provided pictures of the condition of the car together with his testimony and the testimony of a police officer, who had prepared a report documenting the damage to the car. Husband testified that he believed the car to be worth $600 in its damaged state. Wife testified that the car was damaged when the parties purchased it. The trial court concluded that Husband provided no evidence that the car suffered the damage after the parties separated.

{¶8} Although Husband frames his third assignment as a challenge to the trial court's discretion in dividing marital property, in his argument in support, Husband essentially challenges the weight the trial court afforded to the parties' testimony. He maintains that the court "was unreasonable or arbitrary * * * in rejecting [Husband's] testimony that the 1995 Ford Crown Victoria had been severely damaged while in [Wife's] possession since July of 2011 and

accepting [Wife's] testimony that the motor vehicle had those damages when it was purchased by [Husband] in 2010[.]" When reviewing the manifest weight of the evidence:

> The [reviewing] court * * * weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.

(Internal quotations omitted.) *Fetzer v. Fetzer*, 9th Dist. Wayne No. 12CA0036, 2014-Ohio-747, ¶ 21, quoting *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20.

{¶9} Husband has provided this Court with no indication as to why the trial court should have believed his testimony over that of Wife, except that he maintains that the car could not have been driven with such extensive damage and maintains that it would not have been purchased in such a condition. However, our review of the record reveals no evidence of damage which we could say necessarily renders the car inoperable and no reason why it would necessarily not have been purchased at the amount in question in the damaged state. Further, aside from the parties' competing testimony, there exists no evidence as to when any of the damage occurred. We cannot say that the trial court clearly lost its way in in crediting Wife's testimony on this issue. *See Eastley* at ¶ 20.

{¶10} Accordingly, Husband's third assignment of error is overruled.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY TREATING A $38,550 BANK LOAN OBTAINED BY [MS. SCHNEIDER] TO PAY OFF THE MORTGAGE DEBT OWED ON THE MARITAL RESIDENCE, IN ORDER TO SETTLE A PENDING FORECLOSURE CASE BROUGHT BY THE MORTGAGE HOLDER, AS AN INCREASE IN MARITAL EQUITY IN THE RESIDENCE, WHERE []HUSBAND TRAN[S]FERRED OWNERSHIP OF THE RESIDENCE TO HIS SISTER IN EXCHANGE FOR HER PAYMENT OF THAT MORTGAGE DEBT, AND BY ORDERING []HUSBAND TO PAY []WIFE THE SUM OF $19,275.

{¶11} In his second assignment of error, Husband argues that the trial court erred in concluding that the satisfaction of the mortgage was active appreciation on Husband's equity interest constituting marital property and in awarding Wife one-half of this amount as an increase in the equity in the home. We agree.

{¶12} As set forth above in our discussion of Husband's third assignment of error, "A trial court has broad discretion in making divisions of property in domestic cases." *Budd*, 2013-Ohio-2170, at ¶ 8, quoting *Hines*, 2010-Ohio-2996, at ¶ 4. R.C. 3105.171(C)(1) provides, in relevant part, that "the division of marital property shall be equal. If an equal division of marital property would be inequitable, the court shall not divide the marital property equally but instead shall divide it between the spouses in the manner the court determines equitable." However, unlike "marital property," "'separate property' should be disbursed to the spouse who acquired it unless the court decides to make a distributive award of all or part of it to the other spouse." *Charles v. Charles*, 9th Dist. Lorain No. 96CA006396, 1997 WL 28247, *3 (Jan. 22, 1997), citing R.C. 3105.171(D) and R.C.3105.171(E)(1).

{¶13} "Marital property" includes all income and appreciation on separate property, due to the labor, monetary, or in-kind contribution of either or both of the spouses that occurred during the marriage. R.C. 3105.171(A)(3)(a)(iii). However, *passive* income and appreciation acquired from separate property by one spouse during the marriage, remains that spouse's separate property. R.C. 3105.171(A)(6)(a)(iii), (D). Although the division of marital property is reviewed for an abuse of discretion, "[t]he classification of property as marital or separate is a question of fact that this Court reviews under a civil manifest weight standard." *Fetzer v. Fetzer*, 9th Dist. Wayne No. 12CA0036, 2014-Ohio-747, ¶ 21, quoting *Hahn v. Hahn*, 9th Dist. Medina

No. 11CA0064-M, 2012-Ohio-2001, ¶ 20, citing *Louis v. Louis*, 9th Dist. Wayne No. 10CA0047, 2011-Ohio-4463, ¶ 4. When reviewing the manifest weight of the evidence:

> The [reviewing] court * * * weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.

(Internal quotations omitted.) *Fetzer* at ¶ 21, quoting *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. Here, although Husband frames his argument in terms of the trial court abusing its discretion, his challenge pertains to the trial court's classification of the mortgage payoff as marital property. Accordingly, we will review his argument under the manifest-weight standard. *See Fetzer* at ¶ 21.

{¶14} In the decree, the trial court determined that the term of the parties' second marriage for purposes of the property division was October 22, 2010 to January 14, 2014, the date of the final hearing. With respect to the marital residence, the trial court noted that the division of the parties' assets was complicated by the parties' failure to execute the terms of the original divorce decree. The trial court also noted that the division of the marital property was complicated by Husband's transfer of the marital residence to Ms. Schneider, an action which the trial court stated was in violation of a mutual restraining order. The trial court noted that Husband had failed to pay Wife the $29,000 equity payment as ordered in the first decree, and Wife had exercised her option to remain at the marital residence, with $719.89 per month being credited toward the $29,000 equity payment. The trial court concluded that, after appropriate crediting, Husband still owed Wife $3,803.05 for her equity in the home. Accordingly, the court determined that the marital residence was Husband's separate property because he was awarded the marital residence in the first divorce, making it premarital to the second marriage. However,

Wife also had a separate property interest in the marital residence in the amount of $3,803.05 still owed to her as her share of marital equity of the residence from the first divorce, which was her separate property at the time of the second marriage. Husband does not challenge this portion of the trial court's order.

{¶15} However, the trial court then proceeded to conclude that Ms. Schneider's payment of the mortgage debt associated with the marital residence was "appreciation" in the equity of the home that occurred during the second marriage. Because the pay-down of the mortgage was accomplished due to Husband's "solicit[ation]" of Ms. Schneider's assistance during the marriage, the trial court determined that this "appreciation" was not passive, and thus constituted marital property. *See* R.C. 3105.171(A)(6)(a)(iii), (A)(3)(a)(iii). Accordingly, the trial court awarded Wife one-half of the $38,550 pay-off as her share of marital "appreciation[.]"

{¶16} Although the trial court used the term "appreciation" to refer to an increase in equity, these terms are not properly interchangeable. "Appreciation" refers to the increase in the value of *an asset*, not the increase of *equity in* that asset. *See Black's Law Dictionary* 110 (8th Ed.2004); *see also Moore v. Moore*, 11th Dist. Portage Nos. 2012-P-0136, 2012-P-0138, 2013-Ohio-5649, ¶ 29 (a pay down of liabilities encumbering real property increases equity but does not result in "appreciation"). An asset is "[*a*]*n item* that is owned and has value." (Emphasis added.) *Black's at* 125. "Equity," as that term was used by the trial court here, relates to "the amount by which the value of or an interest in property exceeds secured claims or liens; the difference between the value of the property and all encumbrances upon it[.]" *Black's* at 580. Accordingly, although "appreciation" may cause an increase in equity, the terms are not synonymous. We clarify the distinction in these terms to stress that there existed no evidence of any appreciation, i.e. increase in the value, of the marital residence during the second marriage.

*Compare Middendorf v. Middendorf*, 82 Ohio St.3d 397, 398 (1998) (addressing appreciation of stockyard in which Husband had a premarital interest).

**{¶17}** Despite its utilization of the term "appreciation[,]" it appears that the trial court essentially determined that the decrease in Husband's separate mortgage debt was the result of marital effort, entitling Wife to a credit. *See Ray v. Ray*, 9th Dist. Medina No. 03CA0026-M, 2003-Ohio-6323, ¶ 8*; see also Flynn v. Flynn*, 196 Ohio App.3d 93, 2011-Ohio-4714, ¶ 18 (12th Dist.) (paydown of mortgage attributable to marital effort is marital equity). Husband argues that the trial court should have treated the payoff as a sale, as he quitclaimed his interest in the property to Ms. Schneider in exchange for the payoff, because the house was subject to a foreclosure proceeding. Accordingly, Husband maintains that the payoff of the mortgage was acquired through his transfer of his separate property interest. *See also* R.C. 3105.171(A)(6)(a)(ii), (A)(6)(b). Essentially Husband is arguing that his separate property merely changed in form from his separate property interest in the marital residence to the payoff of the mortgage obligation. We agree.

**{¶18}** Here, the property interest at issue is the reduction of Husband's separate mortgage debt. The trial court noted that "on January 22, 2013 and through his sole efforts, [Husband] solicited Ms. Schneider's help to pay off the mortgage on the home and on February 24, 2013, he unilaterally violated the mutual restraining order by transferring title of the residence to Ms. Schneider. Whether his intent was to save the house from foreclosure, as he testified, or whether his real motivation was to thwart any claims of interest by []Wife is irrelevant. His efforts were successful and now the marital residence is unencumbered by debt."

**{¶19}** Despite the undisputed evidence presented at the final hearing that Husband transferred his interest in the property to Ms. Schneider through quitclaim deed, the trial court

appears to have disregarded that transaction to conclude that there was an increase in an equity interest retained by Husband. This determination is not supported by any of the evidence before the trial court. The testimony of Husband and Ms. Schneider, which was undisputed, and in fact recognized by Wife at trial, was that Husband quitclaimed his interest in the marital home to Ms. Schneider in exchange for her paying off the mortgage on the property. Accordingly, there was no evidence before the trial court that Husband retained an interest in the real property for which there could be any increase in equity, whether it be achieved through marital effort or otherwise.

{¶20} We emphasize that nothing in our opinion should be read as condoning a party's violation of a court order, and the trial court was free to sanction Husband if that was its intention. Instead, our focus is on the evidence speaking to Husband's increase of equity, in accordance with the trial court's determination, as this purported increase in equity served as a fundamental basis for the trial court's award of half of that equity to Wife.

{¶21} Based upon the foregoing evidence presented at the final hearing, we conclude that the trial court clearly lost its way in determining that Husband's equity in the marital residence increased, where it was not disputed, and the trial court appears to have accepted, that Husband transferred his interest to Ms. Schneider in consideration of her payment of his separate mortgage debt. Husband's second assignment of error is sustained. On remand, the trial court is ordered to vacate the $19,275 award to Wife attributable to Ms. Schneider's payment of Husband's separate property debt, and make any adjustments necessary to the property division as are within its discretion to make.

## ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY AWARDING INDEFINITE SPOUSAL SUPPORT TO []WIFE IN THE AMOUNT OF $340 PER MONTH UNTIL THE EARLIER OF THE DEATH OF EITHER PARTY, WIFE'S REMARRIAGE, OR WIFE'S CO-HABITATION WITH AN UNRELATED ADULT MALE.

**{¶22}** In his first assignment of error, Husband contends that the trial court erred in ordering him to pay Wife $340 per month in spousal support for an indefinite period.

**{¶23}** "[I]n determining whether spousal support is appropriate and reasonable, the court must consider, among other factors, '[t]he relative assets and liabilities of the parties * * * .'" *Fetzer*, 2014-Ohio-747, at ¶ 60, quoting *Braidy v. Braidy*, 9th Dist. Summit No. 26608, 2013-Ohio-5304, ¶ 16, quoting R.C. 3105.18(C)(1)(i). Accordingly, based upon our resolution of Husband's second assignment of error, this matter must be remanded to the trial court for reassessing the property division. *See id.* Therefore, we conclude that our review of the spousal support award is premature, and we decline to address it.

### III.

**{¶24}** Husband's third assignment of error is overruled, and Husband's second assignment of error is sustained. Our resolution of Husband's second assignment of error renders our review of Husband's first assignment of error premature. The decision of the trial court is affirmed in part, and reversed in part, and this matter is remanded to the trial court for further proceedings consistent with this decision.

Judgment affirmed in part,
reversed in part,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

 

 

CARLA MOORE
FOR THE COURT

 

 

SCHAFER, J.
CONCURS.

CARR, P. J.
CONCURRING IN PART, AND DISSENTING IN PART.

{¶25} I would sustain Husband's third assignment of error. At the outset, Wife did not file an appellate brief. Therefore, we may accept the facts and issues as stated in Husband's appellate brief as correct and reverse the judgment if Husband's brief reasonably appears to sustain such action. *See* App.R. 18(C). During the pendency of the divorce proceeding, Husband filed a motion for the court to order the return of a 1995 Crown Victoria automobile he claimed as separate property. The magistrate who heard the motion ordered Wife to return the car to Husband by leaving it at a location in Brunswick for him to pick up.

{¶26} Instead of leaving the car in Brunswick though as she was ordered, Wife left the car in a different location in Medina Township. Husband testified at the hearing that Wife severely damaged the car before she returned it to him. Upon discovering the damage, Husband took photographs of the claimed damage and filed a police report. The officer who took the report testified at the hearing and confirmed the reported damage. According to the evidence at trial, all of the knobs on the dashboard of the car were broken off, including the knobs for the windshield wipers and the lights. In addition, the front driver's door would not close; the gas cover door was missing; the gas release button was broken on the inside of the driver's door; the trunk key was broken off inside the lock on driver's door, the trunk would not open; the ashtray/cup holder component was ripped out/missing with wires hanging down; the glove box was broken with the door flying open and swinging; the backseat passenger's roof handle behind the driver's seat was broken and hanging down; and the rear view mirror was missing. Wife claimed the car was in this state at the time of purchase and no additional damage was done.

{¶27} Although as a reviewing court we defer to the finder of fact, in reviewing the weight of the evidence and credibility we are not forced to accept the incredible as true. *State v. Apanovitch*, 33 Ohio St.3d 19, 23-24 (1987). I find it incredible that anyone would purchase a car in this condition and, moreover, drive it in that condition for three years without a rearview mirror or knobs to control the lights and windshield wipers, for example. Moreover, it seems implausible and incredible to me that all of the knobs on the dashboard were broken off or missing without an intentional act being done. Consequently, I would sustain Husband's third assignment of error.

{¶28} I concur with the remainder of the opinion.

APPEARANCES:

JOSEPH F. SALZGEBER, Attorney at Law, for Appellant.

CAROLINE CHERCONIS, pro se, Appellee.