[Cite as *Elliot-Thomas v. Lewis*, 2019-Ohio-3870.]

| | | | |
|---|---|---|---|
| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

KRISTEN H. ELLIOT-THOMAS

    Appellee

    v.

LEE Q. LEWIS

    Appellant

C.A. No.    29164

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    DR-2012-10-2922

DECISION AND JOURNAL ENTRY

Dated: September 25, 2019

---

TEODOSIO, Presiding Judge.

{¶1}  Appellant, Lee Q. Lewis, appeals from a judgment of the Summit County Court of Common Pleas, Domestic Relations Division, that granted him a divorce from appellee, Kristen Elliot-Thomas, allocated their parental rights and responsibilities, divided the parties' property, and ordered Mr. Lewis to pay child support.  For the reasons stated below, this Court reverses and remands.

I.

{¶2}  Mr. Lewis and Ms. Elliot-Thomas were married on June 21, 2000.  Two daughters were born during the marriage.  Although this case has a long history, this Court will confine its review to the basic facts relevant to this appeal.

{¶3}  On October 2, 2012, Ms. Elliot-Thomas filed a complaint for divorce.  During these proceedings, the parties agreed to a shared parenting plan that allocated their parenting time with the children.  During August 2018, the matter proceeded to a three-day contested

hearing on the division of property and child support. Prior to the commencement of the hearing, the parties stipulated that the date of filing the complaint would serve as the de facto date of the divorce. The contested issues during the hearing included the valuation and division of the parties' separate and marital property and debt; whether Mr. Lewis committed financial misconduct under R.C. 3119.171(E)(3) by failing to file or pay income taxes for several years during the marriage; and the amount of child support that Mr. Lewis would pay.

{¶4} The trial court later issued the divorce decree that is the subject of this appeal. Mr. Lewis appeals and raises seven assignments of error, which pertain to the primary issues that were contested at the hearing. For ease of discussion, this Court will consolidate and rearrange several of the assignments of error.

## I.

### ASSIGNMENT OF ERROR THREE

THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY FINDING THAT MS. ELLIOT-THOMAS' PNC CREDIT CARD HAD MORE THAN A ZERO DOLLAR BALANCE ON THE DE FACTO DIVORCE DATE AND THAT THE CHASE MASTERCARD WAS HER DEBT.

### ASSIGNMENT OF ERROR FOUR

THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN REFUSING TO APPLY THE DE FACTO DATE TO THE FIRST MORTGAGE AND IMPUTING TEMPORARY SPOUSAL SUPPORT IN A FINAL ORDER.

### ASSIGNMENT OF ERROR FIVE

THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN DETERMINING THE PRE-MARITAL AND PRESENT VALUE OF THE BUSINESS.

### ASSIGNMENT OF ERROR SEVEN

THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY USING A MARITAL BALANCE SHEET THAT CONFLICTED WITH ITS OWN FINDINGS OF FACT AND BY CONCLUDING TRIAL WITHOUT ADEQUATE NOTICE.

**During the Marriage**

{¶5} This Court will address these assignment errors together because they pertain to the trial court's valuation and division of the parties' separate and marital property and debt. Underlying all these assigned errors is the argument that the trial court erred in using different periods "during the marriage" for purposes of valuing and dividing certain property and debts. Prior to dividing a couples' property and debts, the trial court must determine the duration of the marriage by pinpointing the time period that will be considered "during the marriage." *Tustin v. Tustin*, 9th Dist. Summit No. 27164, 2015-Ohio-3454, ¶ 17. The term "during the marriage" is a term of art and is the period that is used to identify separate and marital property and debts and to value the couples' property and debt.

{¶6} Under R.C. 3105.171(A)(2), the phrase "during the marriage" means *whichever period* is applicable:

> (a) Except as provided in division (A)(2)(b) of this section, the period of time from the date of the marriage through the date of the final hearing in an action for divorce or in an action for legal separation;
>
> (b) If the court determines that the use of either or both of the dates specified in division (A)(2)(a) of this section would be inequitable, the court may select dates that it considers equitable in determining marital property. If the court selects dates that it considers equitable in determining marital property, "during the marriage" means the period of time between those dates selected and specified by the court.

(Emphasis added.) In other words, R.C. 3105.171(A)(2) requires the trial court to choose a single time period for classifying and valuing the couple's property and debts. R.C. 3105.171(G) also contemplates that the trial court will choose a single period "during the marriage," as it requires the trial court make factual findings to support its division of property, which is required to "specify the dates [beginning and termination of marriage] it used in determining the meaning of 'during the marriage.'"

{¶7}    Generally, the court must choose a specific date for purposes of valuation and use it consistently; a party cannot pick and choose what dates to value certain items of marital property.  *Brown v. Brown*, 5th Dist. Licking No. 2008CA0111, 2009-Ohio-4913, ¶ 43, citing *Frohman v. Frohman*, 11th Dist. Trumbull No. 2001-T-0021, 2002-Ohio-7274, ¶ 16.  Although the Fifth and Eleventh Appellate Districts have held that a trial court may sometimes use different dates for valuation purposes, it emphasized that "this exception is very limited in scope" and the trial court must explain its equitable reasons for doing so.  *Id*., citing *Frohman* at ¶ 17.

{¶8}    This Court, however, has not explicitly adopted that reasoning from the Eleventh District, nor is the use of two different "during the marriage" time periods supported by a plain reading of R.C. 3107.171.  R.C. 3105.171(A)(2) grants the trial court the discretion to choose "whichever is applicable" under subsection (a) or (b), but not both.  The trial court was required to choose one time period "during the marriage" for valuing and dividing the parties' property.

{¶9}    In this case, the parties had stipulated prior to the hearing that the period "during the marriage" would be from the date of marriage until the date that Ms. Elliot-Thomas filed for divorce on October 2, 2016.  In its valuation of the parties' marital and separate property and debts, however, the trial court did not consistently use that time period.  The trial court repeatedly emphasized that several years had passed since the divorce complaint had been filed, apparently attempting to justify using the date of the hearing for dividing some of the parties' property.  Had the trial court found that it was more equitable to determine that the marriage ended at the time of the hearing, rather than the date of filing the complaint, it should have consistently applied that as the end of the "during the marriage" period.  The trial court was not free to pick and choose different dates, several years apart, for valuing and dividing certain items

of property, particularly when its use of those different dates repeatedly benefitted Ms. Elliot-Thomas over Mr. Lewis.

{¶10} For example, the trial court credited Ms. Elliot Thomas for paying off two credit card balances after she filed the complaint on October 2, 2016. In addition to the fact that one of those credit cards belonged to her boyfriend and there was no evidence that she had an obligation to pay that debt, the trial court gave her credit for paying off over $20,000 in marital debt. On the other hand, Mr. Lewis received no credit for paying off other marital debts between the de facto date of divorce and the date of the hearing, including over $55,000 he paid on a mortgage on the marital residence.

{¶11} Because the trial court did not confine its valuation and division of property and debts to a single "during the marriage" period, its property division must be reversed and remanded. The trial court shall select a single, equitable period "during the marriage" and identify, value, and divide the parties' separate and marital property and debts using that specific period.

{¶12} Although Mr. Lewis raises additional arguments within these assignments of error, most of them have been rendered moot. He raises two arguments, however, that will not be moot if the trial court relies on the same evidence on remand. Insofar as Mr. Lewis contends that the trial court concluded the hearing without adequate notice to the parties, he forfeited this issue by failing to raise a timely challenge in the trial court.

{¶13} Mr. Lewis also contends that the trial court erred in relying on the expert evidence presented by Ms. Elliot-Thomas about the valuations of his business rather than on the testimony of his witness. Mr. Lewis raised no objections to the qualifications of the witness to testify as a business evaluation expert. Although he did object to the expert presenting an amended report,

the expert explained that he had corrected mathematical errors, but that the remainder of the report remained the same. Mr. Lewis's own witness testified that he had identified the mathematical errors when reviewing the initial report and that they were corrected in the amended report that was admitted into evidence. Moreover, Mr. Lewis's witness admitted that he was not an expert in business valuation and that he had based part of his valuation on the 17-year-old report of another witness who was not present at the hearing to testify. Consequently, he has failed to establish that the trial court erred in considering the evidence presented by Ms. Elliot-Thomas about the valuation of his business.

{¶14} Mr. Lewis's third, fourth, fifth, and seventh assignments of error are sustained insofar as they challenge the trial court's identification, valuation, and division of separate and marital property because it did not confine its property division to a single "during the marriage" period. Except as stated above, this Court does not reach the merits of his other arguments because they have been rendered moot.

ASSIGNMENT OF ERROR ONE

THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN EXCLUDING THE TAX LIABILITY ATTACHED TO THE MARITAL RESIDENCE FROM THE OTHER MARITAL DEBTS ON GROUNDS THAT MR. LEWIS ENGAGED IN FINANCIAL MISCONDUCT FOR NOT FILING THE PARTIES TAXES FROM 2002 THROUGH 2012.

ASSIGNMENT OF ERROR TWO

THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN ISSUING A DISTRIBUTIVE AWARD IN THE AMOUNT OF $7,500 TO MS. ELLIOT-THOMAS ON THE BASIS THAT MR. LEWIS ENGAGED IN FINANCIAL MISCONDUCT FOR NOT FILING THE PARTIES' TAXES FROM 2002 THROUGH 2012.

**Financial Misconduct**

{¶15} This Court will address the first two assignments of error together because they are both based on a challenge to the trial court's conclusion that Mr. Lewis engaged in financial misconduct. Mr. Lewis contends that the trial court applied the wrong legal standard to determine whether he had engaged in financial misconduct under R.C. 3105.171(E)(3).

{¶16} Pursuant to R.C. 3105.171(E)(4), the trial court may compensate one spouse with a distributive award or a greater share of marital property if it finds that the other spouse "has engaged in financial misconduct, including, but not limited to, the dissipation, destruction, concealment, or fraudulent disposition of assets[.]" The trial court determined that Mr. Lewis had engaged in financial misconduct by failing to pay the couple's income taxes, citing to a case from another district that did not actually address that issue on appeal because it was the other spouse who had appealed the trial court's judgment. *See Oliver v. Oliver*, 5th Dist. Tuscarawas No. 2012 AP 11 0067, 2013-Ohio-4389, ¶ 10-11.

{¶17} Moreover, this Court has adopted the reasoning of several other appellate districts that irresponsible financial decisions and even dishonest financial behavior, in and of themselves, do not constitute "financial misconduct" under R.C. 3105.171. Instead, for the trial court to find the requisite "financial misconduct," it must conduct a two-pronged analysis. The trial court must find (1) a wrongdoing by one spouse that interferes with the other spouse's property rights and (2) that the wrongdoing results in profit to the wrongdoer "or stems from an intentional act meant to defeat the other spouse's distribution of assets." *Bucalo v. Bucalo*, 9th Dist. Medina No. 05CA0011-M, 2005-Ohio-6319, ¶ 30. Moreover, "[t]he burden of proving financial misconduct is on the complaining party." *Id.* at ¶ 23.

{¶18} The facts were not disputed that Mr. Lewis handled the couple's finances and that he did not pay income taxes or file returns for many years during their marriage and that, because

of his failure to file, interest and penalties had been assessed against the couple. Consequently, he engaged in financial wrongdoing to the detriment of both parties. The record does not appear to include evidence to support the second prong of the test, that he profited from that wrongdoing at the expense of Ms. Elliot-Thomas. Nevertheless, it is not for a reviewing court to make that finding in the first instance on appeal. *In re M.B.*, 9th Dist. Summit No. 21760, 2004-Ohio-597, ¶ 9, citing *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 360 (1992) and Article IV, Section 3(B)(2), Ohio Constitution. Because the trial court used the wrong legal standard to determine whether Mr. Lewis had engaged in financial misconduct during the marriage, his first and second assignments of error are sustained.

## ASSIGNMENT OF ERROR SIX

THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN CALCULATING THE AMOUNT OF CHILD SUPPORT TO BE PAID BY MR. LEWIS; FAILING TO GRANT HIM A DEVIATION; AND ORDERING HIM TO PAY UP TO $14,750 PER YEAR IN EXTRACURRICULAR ACTIVITIES[.]

### Private School Tuition as Part of Child Support

{¶19} The sixth assignment of error pertains to the trial court's order that Mr. Lewis pay monthly child support of $1261.25, plus processing charges; and that he also pay $14,750 per year to cover part of the cost of his daughters' extracurricular activities and tuition for one of them at a private, out-of-state dance academy. Mr. Lewis contends that the trial court erred in requiring him to pay $14,750 toward the school tuition and extracurricular expenses for numerous reasons, including that the trial court failed to consider his ability to pay and that the parties never agreed that the older child would attend an out-of-state dance academy, the cost of which was more than double the cost of both daughters' private school tuition while the parties resided together.

{¶20} This Court reviews a trial court's award of child support for an abuse of discretion. *Pauly v. Pauly*, 80 Ohio St.3d 386, 390 (1997). The trial court must exercise that discretion, however, within the parameters of Ohio law. In this case, although Mr. Lewis also disputes that trial court's calculation of his annual income, he does not dispute that the parties' combined annual income was over $150,000. Consequently, the trial court was required by former R.C. 3119.04 to determine the child support award on a case-by-case basis, considering the needs and standard of living of the children and their parents.

{¶21} This Court has held that a domestic relations court has authority to order a parent to pay for private school tuition as a form of child support only if it determines that "1) it is in the best interest of the child to have private schooling; 2) the payor(s) can afford to pay the tuition; 3) the child[] [has] been in private schooling; and 4) private schooling would have continued if not for the ending of the marriage." (Internal quotations omitted.) *Tustin v. Tustin*, 9th Dist. Summit No. 27164, 2015-Ohio-3454, ¶ 31.

{¶22} In determining whether to order Mr. Lewis to pay a portion of the children's extracurricular activities and private school tuition, the trial court did not consider the four factors listed above. Notably, although the children had attended private school and had been involved in dance while the parties lived together, the cost of the one child's tuition, room, and board at the out-of-state dance academy was more than double the former cost of both children's dance expenses and private school tuition. There was also no evidence in the record about whether this schooling would have occurred had the marriage continued or whether Mr. Lewis had the ability to pay $14,750 above and beyond his annual child support obligation of over $15,000.

{¶23} Although the trial court purported to consider the parties' standard of living during the marriage, it is evident from the record that, while the parties lived together, they lived beyond their financial means. For example, Mr. Lewis had stopped contributing to his substantial, pre-marital retirement account and the couple had even borrowed $10,000 from that account. They also borrowed against the marital residence and failed to pay income taxes for several years during the marriage. Rather than paying for expenses incurred during the marriage, the parties had accumulated tens of thousands of dollars in additional debt.

{¶24} Because the trial court failed to properly consider whether ordering Mr. Lewis to pay $14,750 in private school tuition, in addition to annual child support of over $15,000, was appropriate in this case, the matter is reversed and remanded for a new determination of child support. Mr. Lewis' sixth assignment of error is sustained.

### III.

{¶25} Mr. Lewis's assignments of error are sustained insofar as the trial court failed to value and divide property based on a single "during the marriage" period; the court applied the wrong legal standard to determine whether Mr. Lewis engaged in financial misconduct; and the trial court failed to consider the requisite factors before ordering Mr. Lewis to pay $14,750 toward private school tuition and dance expenses in addition to the amount of child support calculated on the worksheet. To that extent, the judgment of the Summit County Court of Common Pleas, Domestic Relations Division, is reversed and remanded for proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

THOMAS A. TEODOSIO
FOR THE COURT

HENSAL, J.
CALLAHAN, J.
CONCUR.


APPEARANCES:

WILLIAM A. VASILIOU, II, Attorney at Law, for Appellant.

JOHN M. DOHNER, Attorney at Law, for Appellee.