**[Cite as *Hunt v. Hunt*, 2022-Ohio-412.]**

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | | |

WILLIAM C. HUNT

    Appellant/Cross-Appellee

    v.

MICHELLE L. HUNT

    Appellee/Cross-Appellant

C.A. No.    21CA011720

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.    17DU083698

DECISION AND JOURNAL ENTRY

Dated: February 14, 2022

CALLAHAN, Judge.

{¶1} Appellant/Cross-Appellee, William Hunt ("Husband"), and Appellee/Cross-Appellant, Michelle Hunt ("Wife"), appeal from the judgment of the Lorain County Court of Common Pleas, Domestic Relations Division. This Court reverses and remands for further proceedings.

I.

{¶2} Husband and Wife married in 2003 and had two children together: L.H., born in April 2003, and W.H., born in December 2005. Husband vacated the marital home in July 2017 and filed a complaint for divorce in November 2017. Wife and the children remained in the marital home during the proceedings, and, pursuant to temporary orders, Husband paid the mortgage and utilities in addition to temporary support.

{¶3} A trial was held on five separate days in 2019, but the trial court's judgment was delayed due to the onset of the global pandemic and the court's inability to hold an interview

with the children until a later date. The trial court ultimately issued its judgment in December 2020. That judgment granted the parties a divorce, named Wife the residential parent and legal custodian of the children, awarded her spousal support, and divided the assets and liabilities of the parties.

{¶4} Husband and Wife now appeal from various aspects of the trial court's judgment and raise a combined seven assignments of error for this Court's review. To facilitate that review, this Court reorders and combines several of the assignments of error.

II.

**HUSBAND'S ASSIGNMENT OF ERROR NO. 3**

THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT DETERMINED THAT [HUSBAND'S] INTEREST IN THE MARITAL REAL ESTATE WAS LIMITED TO $29,410.50.

**WIFE'S ASSIGNMENT OF ERROR NO. 1**

THE FINDING BY THE TRIAL COURT THAT THE GIFT OF $10000 BY GRANDMOTHER WAS A JOINT GIFT TO [WIFE] AND TO [HUSBAND] AND EACH PARTY WAS EQUALLY ENTITLED TO $5000 OF THE GIFT WAS CONTRARY TO THE EVIDENCE AND TRIAL COURT ABUSED ITS DISCRETION TO THE PREJUDICE OF [WIFE].

**WIFE'S ASSIGNMENT OF ERROR NO. 2**

THE TRAIL (SIC) COURT ERRED TO THE PREJUDICE OF [WIFE] AND ITS DECISION WAS CONTRARY TO THE EVIDENCE WHEN IT SET OFF $5000 [WIFE] RECEIVED AS ADDITIONAL MONIES FROM [HUSBAND'S] 401(K), WITH THE $10,000 THAT WAS GIFTED TO [WIFE], BY GRANDMOTHER, PRIOR TO MARRIAGE AND WAS SEPARATE PROPERTY.

{¶5} In his third assignment of error, Husband argues that the trial court erred when it determined that his share of the marital home was only $29,410.50. He argues that the court did not properly credit the down payment on the home, did not credit him for mortgage and escrow payments he made after the de facto termination date of the marriage, and did not rely on current

valuation figures in calculating the balance owed on the home. In her first assignment of error, Wife argues that the trial court erred when it found that a portion of the down payment on the marital home was a gift from her mother to Husband. Relatedly, in her second assignment of error, Wife argues that the court erred when it relied on that same finding to award Husband an offset elsewhere in its judgment. Because all three assignments of error are linked to the trial court's determination of the parties' respective interests in the marital home, this Court will address them together.

{¶6} During divorce proceedings, a trial court must determine what property constitutes marital property and what constitutes separate property. R.C. 3105.171(B). *See also* R.C. 3105.171(A)(3)(a) (defining "marital property") and 3105.171(A)(6)(a) (defining "separate property"). To do so, the court must consider the duration of the marriage. *Tustin v. Tustin*, 9th Dist. Summit No. 27164, 2015-Ohio-3454, ¶ 17. It is presumed that the duration of a marriage will be "the period of time from the date of the marriage through the date of the final hearing * * *[,]" R.C. 3105.171(A)(2)(a), but a trial court has "the authority to use a de facto termination date in certain cases, where principles of equity dictate that use of the final hearing date is inappropriate." *Budd v. Budd*, 9th Dist. No. 25469, 2011-Ohio-565, ¶ 14. *See also* R.C. 3105.171(A)(2)(b). A determination of the duration of the marriage is critical because the duration of the marriage will determine the valuation of the marital assets. *Tustin* at ¶ 17. *See also Budd* at ¶ 14; *Schwieterman v. Schwieterman*, 3d Dist. Logan No. 8-19-49, 2020-Ohio-4881, ¶ 43 ("The duration of a marriage provides a trial court with a timeframe for determining the value of marital assets that fluctuate in value."). "[T]he court must choose a specific date for purposes of valuation and use it consistently * * *." *Elliot-Thomas v. Lewis*, 9th Dist. Summit No. 29164, 2019-Ohio-3870, ¶ 7.

{¶7} While a trial court's decision to use the final hearing date or a de facto date to define the duration of a marriage is a discretionary one, *Budd* at ¶ 8, the classification of property as marital or separate is a fact-based determination that this Court reviews under the manifest weight of the evidence standard. *Kolar v. Kolar*, 9th Dist. Summit No. 28510, 2018-Ohio-2559, ¶ 30. When applying that standard, this Court """weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new [hearing] ordered.""" (Alternations made in *Tewarson*.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20, quoting *Tewarson v. Simon*, 141 Ohio App.3d 103, 115 (9th Dist.2001), quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 174 (1st Dis.1983). In weighing the evidence, this Court "must always be mindful of the presumption in favor of the finder of fact." *Eastley* at ¶ 21.

{¶8} Once the duration of a marriage has been established and property has been designated marital or separate property, a trial court must divide the property equitably between spouses. R.C. 3105.171(B). "R.C. 3105.171(C)(1) requires trial courts to divide marital property equally, except to the extent that an equal division would be inequitable." *Schoch v. Schoch*, 9th Dist. Lorain No. 18CA011382, 2019-Ohio-1394, ¶ 24. If an equal division would be inequitable, the court must divide the marital property in a manner it deems equitable after considering the factors set forth in R.C. 3105.171(F). *Neville v. Neville*, 99 Ohio St.3d 275, 2003-Ohio-3624, ¶ 5. "A trial court enjoys broad discretion in fashioning an equitable division of marital property." *Stepp v. Stepp*, 9th Dist. Medina No. 03CA0052-M, 2004-Ohio-1617, ¶ 10. Consequently, "its judgment will not be disturbed absent an abuse of discretion." *Neville* at ¶ 5.

{¶9}   The trial court determined that the parties were married on August 23, 2003. Although the final hearing date occurred on October 24, 2019, the court found that it would be inequitable to use that date as the date of the termination of the marriage.  Because the parties had been living separate and apart since July 2017, when Husband became subject to a domestic violence civil protection order, the court found it equitable to use the date of the filing of the divorce complaint as the de facto termination date of the marriage.  *See* R.C. 3105.171(A)(2)(b). Consequently, it determined that the duration of the marriage was from August 23, 2003, until November 17, 2017.  Neither party has challenged that discretionary determination on appeal. *See* App.R. 16(A)(7).  Accordingly, for purposes of this decision, this Court accepts that the parties were married from August 23, 2003, until November 17, 2017.

{¶10}  It is undisputed that, during the marriage, the parties and their children resided in a single-family home in Columbia Station.  The trial court found that Wife purchased the home in 1998, when she and Husband were dating and about five years before they married.  A down payment of $21,379.74 was made on the home at the time of purchase, and the court found that $10,000 of that money came from Wife's mother.  The court found that Wife's mother credibly testified that she gifted that sum to both Wife and Husband for the purchase of the home. Consequently, the court determined that half of that money ($5,000) belonged to Husband.  The court found that the home remained in Wife's name until 2005, at which point the parties executed a joint survivorship deed and took joint possession.

{¶11}  The trial court found that the marital home had a fair market value of $248,810, but the parties only had a $106,810 equity interest due to a mortgage balance of $142,000. Rather than split the down payment interest of $21,379.74 between Wife and Husband to account for Husband's $5,000 gift, the court decided to treat the entire $21,379.74 down payment as

Wife's separate interest and to award Husband a $5,000 offset elsewhere in its judgment. The trial court found that the $21,379.74 down payment had appreciated passively in value until 2005 (i.e., the date the property became jointly titled), giving Wife a separate interest of $47,179.74. The court deducted that amount from the equity in the home and concluded that the marital interest of the $106,000 equity was $58,821 ($106,000 - $47,179 = $58,821). The court concluded that Husband was entitled to half of that amount ($29,410.05) and Wife was entitled to the remaining half plus her separate interest of $47,179.74.

{¶12} Regarding the offset, the trial court determined that Husband had a 401(k) and Wife was entitled to half of the funds that accrued during the marriage (i.e., from August 23, 2003, until November 17, 2017). The court found that Husband borrowed $10,000 from his 401(k) to pay his attorney fees and that he owed Wife half that sum. Rather than order Husband to pay Wife that $5,000, the court allowed Wife to keep Husband's half of the $10,000 down payment gift from her mother. The court determined that the two amounts offset one another such that neither party was obligated to pay the other $5,000.

{¶13} Because both parties take issue with the trial court's findings regarding the down payment made on the marital home, this Court begins with those findings. Husband argues that the trial court issued inconsistent findings about the down payment because it treated the entire down payment as belonging to Wife while simultaneously finding that $5,000 of that money was a gift belonging to him. Meanwhile, Wife argues that the weight of the evidence does not support the trial court's finding that her mother gifted $5,000 to Husband as part of the down payment. Wife argues that the testimony showed her mother intended the entire $10,000 to be a gift to Wife.

{¶14} It was Husband's testimony that he gave Wife $5,000 toward a down payment when she purchased the marital home. Specifically, he testified that he contributed $5,000 to the down payment, Wife contributed $5,000, and Wife's mother "was giving us $10,000 * * *." It was Wife's testimony that her mother gifted her $10,000 toward the down payment of the home and the remainder of the down payment came from Wife's separate funds. She claimed that Husband did not contribute any funds to the down payment and the entire $21,379.74 was her separate property. Finally, Wife's mother testified that she gifted Wife $10,000 toward the down payment of the home. The following exchange took place during her testimony:

[COUNSEL]: [D]id you give to [Wife] $10,000 prior to buying her home?

[WIFE'S MOTHER]: Yes.

[COUNSEL]: And you told her that it is for her as a gift; is that correct?

[WIFE'S MOTHER]: Yes, on the basis that she was to pay the taxes. * * *

[COUNSEL]: So basically, that was a gift from you to her at that time, correct?

[WIFE'S MOTHER]: Yeah. Not the taxes, but the [$]10,000.

Wife's mother never testified that she intended any portion of the $10,000 as a gift to Husband who, at the time, was only dating Wife.

{¶15} Upon review, the trial court's finding that Wife's mother provided credible testimony that she gifted $10,000 to both Wife and Husband is against the manifest weight of the evidence. Wife's mother never testified that she gifted any money to Husband. It was her testimony that she gifted Wife $10,000 for the down payment. That testimony was consistent with Wife's testimony that the entire $10,000 was her gift from her mother. Because the testimony supports the conclusion that Husband did not have a separate interest in the $10,000 from Wife's mother, the trial court erred when it made a finding to the contrary.

{¶16} Notably, the trial court's error regarding the $10,000 down payment was harmless as to its classification of the down payment on the marital home. That is because the trial court ultimately treated the entire $21,379.74 down payment as Wife's separate property. Nevertheless, the trial court's error caused it to award Husband an offset elsewhere in its judgment based on its finding that he was owed $5,000 from the $10,000 down payment gift. Specifically, the trial court concluded that Husband did not owe Wife $5,000 from a $10,000 loan he borrowed from his 401(k). The trial court determined that the two amounts offset one another such that neither Husband, nor Wife owed each other any money in that regard. Because the trial court's erroneous finding prejudiced Wife with respect to its equitable division of Husband's 401(k), her first and second assignments of error are sustained.

{¶17} Husband also argues that the trial court erred when it calculated the equity in the marital home and determined that his share was $29,410.05. He notes that the de facto termination date of the marriage was November 17, 2017, but the court did not issue its judgment entry until December 30, 2020. During the time, Husband continued to make the mortgage, tax, and insurance payments on the marital home by virtue of the court's temporary orders. Nevertheless, Husband argues, the trial court valued the equity interest in the home based on the evidence introduced at the trial and did not credit Husband for any payments he made after the de facto termination date of the marriage. Husband essentially argues that the valuation evidence produced at trial was no longer accurate by the time the court issued its judgment. Further, Husband argues that the court's award amounted to a windfall for Wife because only she would reap the benefit of the increased equity that accrued since trial due to the additional payments Husband made on the home.

{¶18}  As noted, the trial court determined that the duration of the parties' marriage was from August 23, 2003, until November 17, 2017, and neither party has challenged that determination on appeal.  In valuing the marital home to calculate each party's marital share, the trial court relied on the exhibits and testimony submitted at trial.  Yet, that evidence pertained to the value of the home in 2019.  Husband relied on (1) a copy of an assessment from the Lorain County Auditor, showing the market total value of the property on June 19, 2019, was $248,810; (2) a copy of a consumer loan statement from Dollar Bank Servicing Center, showing the mortgage balance on June 3, 2019, was $144,670.19; and (3) his testimony from August 19, 2019, that the current mortgage balance "[was] actually 142 something."  Neither party introduced any evidence that would have allowed the trial court to calculate the value of the martial home as of November 17, 2017 (i.e., the de facto termination date of the marriage).

{¶19}  This Court has held that, even when evidence of a piece of property's value is absent, that absence "does not relieve the trial court of its obligation to value the assets of the parties." *Zona v. Zona*, 9th Dist. Medina No. 05CA0007-M, 2005-Ohio-5194, ¶ 6.  If valuation evidence is lacking, "'[t]he court itself should instruct the parties to submit evidence on the matter.'" *Fetzer v. Fetzer*, 9th Dist. Wayne No. 12CA0036, 2014-Ohio-747, ¶ 38, quoting *Zona* at ¶ 6, quoting *Willis v. Willis*, 19 Ohio App.3d 45, 48 (11th Dist.1984).  The court may not rely on valuation evidence that postdates the date it has chosen as the termination date of the marriage.  *Fetzer* at ¶ 38.  If the marital share of a marital home cannot be calculated because there was insufficient evidence presented to the trial court, then the matter must be "remanded to the trial court for the purpose of taking evidence on [the] issue and recalculating the marital mortgage pay down and readjusting the property division to allow for an equitable division of the marital property." *Ray v. Ray*, 9th Dist. Medina No. 03CA0026-M, 2003-Ohio-6323, ¶ 11.

{¶20} Because the trial court determined that the duration of the parties' marriage was from August 23, 2003, until November 17, 2017, it was obligated to consistently determine the valuation of the marital assets using those specific dates. *See Tustin*, 2015-Ohio-3454, at ¶ 17; *Elliot-Thomas v. Lewis*, 2019-Ohio-3870, at ¶ 7. Although the trial court used those dates to determine Wife's share of Husband's 401(k), it relied on evidence from 2019 to determine Husband's and Wife's respective shares of the marital home. The record reflects that the court did so because neither party introduced sufficient valuation evidence with respect to that property. In the absence of that evidence, it was incumbent upon the trial court to instruct the parties to submit evidence on the matter. *See Fetzer* at ¶ 38. Accordingly, to the extent Husband argues that the trial court erred in valuing the marital home and calculating his marital share, Husband's third assignment of error is sustained. On remand, the trial court must take evidence on the value of the martial home in November 2017, recalculate the marital mortgage pay down, and make any necessary adjustments to the property division to allow for an equitable division of the marital property. *See Ray* at ¶ 11.

## HUSBAND'S ASSIGNMENT OF ERROR NO. 1

THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT DID NOT RESERVE JURISDICTION TO MODIFY OR AMEND SPOUSAL SUPPORT AFTER EVIDENCE SHOWED A FLUCTUATION OF INCOME OF THE PARTIES AND A MARRIAGE OF 18 YEARS.

## HUSBAND'S ASSIGNMENT OF ERROR NO. 2

THE TRIAL COURT COMMITTED REVERSIBLE ERROR AND ABUSED ITS DISCRETION WHEN IT AWARDED [WIFE] SPOUSAL SUPPORT BOTH AS TO AMOUNT AND DURATION.

{¶21} Husband's remaining assignments of error challenge the trial court's award of spousal support to Wife and its decision not to reserve jurisdiction to modify that award. As noted, this matter must be remanded for the trial court to take additional evidence, perform

recalculations, and make any necessary adjustments to the property division to allow for an equitable division of the assets. *See* Discussion of Husband's Third Assignment of Error, *supra*. Given that a court must consider the relative assets and liabilities of the parties in determining the nature, amount, and duration of spousal support, *see* R.C. 3105.18(C)(1), the trial court may revisit its spousal support determination in conjunction with any adjustment it finds necessary to make to an equitable property division. As such, this Court must conclude that Husband's challenges to the court's award of spousal support are premature. *See Tustin* at ¶ 19. *See also Zona*, 2005-Ohio-5194, at ¶ 10.

### WIFE'S ASSIGNMENT OF ERROR NO. 3

THE TRIAL COURT ERRED TO THE PREJUDICE OF [WIFE], WHEN IT FAILED TO DIVIDE THE MASTERCARD[1] CREDIT CARD DEBT WHICH WAS USED DURING THE MARRIAGE AND WAS MARITAL.

**{¶22}** In her third assignment of error, Wife argues that the court erred when it failed to address a Discover credit card debt that was incurred during the marriage and, therefore, a marital debt. Because the court's failure to address and divide a debt would affect the finality of its judgment, this Court begins with a review of the evidence concerning the debt and the trial court's judgment entry. *See Smith v. Smith*, 9th Dist. Summit No. 24993, 2011-Ohio-2506, ¶ 2-8 (dismissing appeal where judgment entry of divorce failed to divide an outstanding loan).

**{¶23}** Wife testified that she had a Discover credit card account before she and Husband married. She testified that, when she and Husband married, his credit was poor because he had filed for bankruptcy. According to Wife, the two decided to add Husband to Wife's Discover

---

[1] While Wife's captioned assignment of error refers to a Mastercard credit card debt, her argument and the testimony and exhibits she cites in support of that argument pertain to a Discover credit card debt. Because her singular reference to a Mastercard debt appears to be a scrivener's error, this Court merely notes the discrepancy and addresses her argument regarding the Discover credit card debt.

account so that he could build credit. She testified that both she and Husband used the account and amassed a debt of $3,102.95 during the marriage. She set forth evidence of a Discover statement date in that amount. Although only Wife's name appeared on the statement, she also introduced a letter she received from Discover. The letter confirmed that Husband was removed as an authorized user on the account as of July 28, 2017.

{¶24} Husband's testimony was that the Discover credit card debt was attributable to Wife. He testified that Wife added his name to the account without his permission and that he never signed any paperwork to confirm that he wanted to be added to the account. Husband claimed that he ultimately spoke with Discover and had his name removed from the account.

{¶25} In its judgment entry, the trial court did not make any express credibility determinations about the Discover credit card debt. The court simply ordered that Husband was responsible for the payment of his personal credit cards and debts and Wife was responsible for the payment of her personal credit cards and debts. The court also ordered "that the parties warrant, each to the other, that there exists no joint debt other than that set forth above." The court decreed that, if any joint debt was later discovered, "then the party who incurred such debt shall be responsible for the payment, hold the other party harmless on such debt, and indemnify the other party for such indebtedness."

{¶26} Wife argues that the trial court disregarded the Discover credit card debt and failed to consider it when equitably dividing the martial assets and liabilities. She argues that the court's judgment is against the manifest weight of the evidence and amounts to an abuse of discretion because the testimony showed that the Discover credit card debt was a martial debt. According to Wife, Husband failed to offer any testimony to refute that the credit card debt was a marital debt.

{¶27} Upon review of the face of the judgment entry of divorce, this Court cannot conclude that the trial court failed to divide the Discover credit card debt or that its judgment was indefinite such that it did not constitute a final, appealable order. *Compare Bencin v. Bencin*, 9th Dist. Medina Nos. 10CA0097-M, 11CA0113-M, 2012-Ohio-4197, ¶ 3-9. The evidence showed that the Discover credit card account was only in Wife's name at the time of trial, and the trial court specifically ordered that Wife was responsible for the payment of her personal credit cards and debts. Thus, setting aside any alleged error the trial court may have committed in that regard, this Court must conclude that it issued a final judgment.

{¶28} To the extent Wife argues that the court's judgment is against the manifest weight of the evidence and amounts to an abuse of discretion, her arguments are not yet ripe for review. This matter must be remanded for the trial court to take additional evidence, perform recalculations, and make any necessary adjustments to the property division to allow for an equitable division of the assets. *See* Discussion of Husband's Assignment of Error Number Three, *supra*. Because the remand will result in a new equitable division of the property, a review of the current division of the property would be premature. For that reason, this Court declines to further address Wife's third assignment of error.

## WIFE'S ASSIGNMENT OF ERROR NO. 4

THE TRIAL COURT'S DECISION DENYING [WIFE] HER REQUEST FOR ATTORNEY FEES, WAS UNREASONABLE AND ARBITRARY AND CONTRARY TO THE FACTORS IN R.C. 3105.18(H).

{¶29} In her fourth assignment of error, Wife argues that the trial court abused its discretion when it denied her request for an award of attorney fees.

{¶30} Pursuant to R.C. 3105.73(A),[2] a court in a divorce action

> may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable. In determining whether an award is equitable, the court may consider the parties' marital assets and income, any award of temporary spousal support, the conduct of the parties, and any other relevant factors the court deems appropriate.

This matter must be remanded for the trial court to take evidence on the value of the marital home in November 2017, recalculate the marital mortgage pay down, and make any necessary adjustments to the property division to allow for an equitable division of the marital property. *See* Discussion of Husband's Assignment of Error Number Three, *supra*. Because marital assets are a factor the court may consider in determining an award of attorney fees, Wife's fourth assignment of error is not yet ripe for review. On remand, the trial court must redetermine the issue of attorney fees in light of its new equitable division of the property and support orders. *See Sharp v. Sharp*, 9th Dist. Wayne No. 19AP0046, 2020-Ohio-3537, ¶ 23. For that reason, this Court declines to further address Wife's fourth assignment of error.

III.

{¶31} Wife's first and second assignments of error are sustained. Husband's third assignment of error is also sustained for the reasons outlined above, and his first and second assignments of error are premature. Likewise, this Court declines to address Wife's third and fourth assignments of error because to do so would be premature. The judgment of the Lorain County Court of Common Pleas, Domestic Relations Division, is reversed, and the cause is remanded for further proceedings consistent with the foregoing opinion.

Judgment reversed,
and cause remanded.

---

[2] Although Wife cites R.C. 3105.18(H) in her brief, that provision was repealed when R.C. 3105.73(B) was enacted. *Simon v. Simon*, 9th Dist. Summit No. 29615, 2021-Ohio-1387, ¶ 40; *Greer v. Greer*, 9th Dist. Lorain No. 18CA011407, 2019-Ohio-4304, ¶ 18.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

LYNNE S. CALLAHAN
FOR THE COURT

TEODOSIO, P. J.
CARR, J.
CONCUR.

APPEARANCES:

DAVID J. BERTA, Attorney at Law, for Appellant/Cross-Appellee.

GOWRI V. HAMPOLE, Attorney at Law, for Appellee/Cross-Appellant.