[Cite as *Hopson v. Hopson*, 2025-Ohio-3257.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

MELWYN HOPSON

    Appellant

    v.

KEVIN HOPSON

    Appellee

C.A. No.      31325

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.     DR 2023-03-0690

DECISION AND JOURNAL ENTRY

Dated: September 10, 2025

---

HENSAL, Judge.

{¶1} Melwyn Hopson appeals a divorce decree entered by the Summit County Court of Common Pleas, Domestic Relations Division. This Court affirms.

I.

{¶2} Husband and Wife married on June 24, 1995. In February 2016, they separated, and they lived apart from that point forward. Wife filed a complaint for divorce on March 15, 2023. On September 15, 2023, Husband moved the trial court for a determination that the de facto date of termination of the marriage was the date of their initial separation, February 14, 2016. After a hearing conducted in February 2024, The trial court concluded that it was appropriate to set a de facto termination date of October 18, 2019, the date on which Husband was no longer covered by Wife's health insurance. On May 13, 2024, one day before the final hearing on the parties' divorce, Wife moved the trial court for a distributive award, arguing that Husband had engaged in financial misconduct by failing to disclose that he had won a house through a charity

raffle. Wife maintained that Husband did not disclose that he owned the house and, instead, moved the trial court to determine an earlier de facto date for the termination of the marriage.

{¶3} In the parties' divorce decree, the trial court denied Wife's motion, concluding that Wife could not establish financial misconduct because Husband gained ownership of the property three years after the de facto termination date. In addition, the trial court concluded that although Husband did not amend his affidavit of property when he took ownership of the property, Wife was aware of the transaction and Husband took no steps to conceal it. The trial court concluded that the house was husband's separate property. Wife filed this appeal. Her two assignments of error are addressed in reverse order for ease of disposition.

I.

**ASSIGNMENT OF ERROR II**

THE TRIAL COURT ERRED [AND] ABUSED ITS DISCRETION WHEN IT GRANTED [HUSBAND'S] MOTION FOR DEFACTO TERMINATION OF MARRIAGE DATE.

{¶4} Wife's second assignment of error is that the trial court abused its discretion by determining that a de facto termination date of October 18, 2019, was appropriate. This Court does not agree.

{¶5} "During divorce proceedings, a trial court must determine what property constitutes marital property and what constitutes separate property" and "[t]o do so, the court must consider the duration of the marriage." *Hunt v. Hunt*, 2022-Ohio-412, ¶ 6. This determination "is critical because the duration of the marriage will determine the valuation of the marital assets." *Id*. Revised Code Section 3105.171(A)(2) establishes a presumption that, for purposes of a property division in a divorce or legal separation, the phrase "[d]uring the marriage" means "the period of time from the date of the marriage through the date of the final hearing . . . ." R.C.

3105.171(A)(2)(a); *Budd v. Budd*, 2011-Ohio-565, ¶ 8 (9th Dist.). A trial court, however, "may select dates that it considers equitable in determining marital property" if it determines that either default date is inequitable. R.C. 3105.171(A)(2)(b). *See also Hunt* at ¶ 6, quoting *Budd* at ¶ 14 ("a trial court has 'the authority to use a de facto termination date in certain cases, where principles of equity dictate that use of the final hearing date is inappropriate.'"). When a trial court does so, the phrase "during the marriage" means "the period of time between those dates selected and specified by the court." R.C. 3105.171(A)(2)(b).

{¶6} This Court has recognized that the use of a de facto termination date is supported when, among other circumstances, "the parties have not attempted reconciliation, and where they have maintained separate residences, bank accounts, and business activities." *Tustin v. Tustin*, 2015-Ohio-3454, ¶ 9 (9th Dist.). We have also applied a "more extensive, but non-exclusive, list of factors to guide the trial court in determining whether a de facto termination date is equitable." *Id.*, citing *Dill v. Dill*, 2008-Ohio-5310, ¶ 11 (3d Dist.). Those factors include whether:

> (1) the parties separated on less than friendly terms, (2) the parties believed the marriage ended prior to the hearing, (3) either party cohabited with another person during the separation, (4) the parties were intimately involved during the separation, (5) the parties lived as husband and wife during the separation, (6) the parties maintained separate residences, (7) the parties utilized separate bank accounts or were/were not financially intertwined (with the exception of temporary orders), (8) either party attempted to reconcile, (9) either party retained counsel, and (10) the parties attended social functions together or vacationed together.

*Tustin* at ¶ 9, quoting *Dill* at ¶ 11. Ultimately, the decision to select a different date falls within the discretion of the trial court. *Budd* at ¶ 8.

{¶7} Husband testified that the parties' separated by mutual agreement in February 2016, but their discussions about separation dated to 2014. According to his testimony, he returned to the house a week after their separation but found that the locks had been changed. Husband testified that neither party had provided financial assistance to the other since their separation. He

acknowledged, however, that because his name was on the mortgage, he participated in a loan modification when the mortgage on the martial residence went into default in 2017. Husband testified that Wife made the mortgage payments, and he noted that they maintained separate bank accounts and did not file joint tax returns after the separation. Husband testified that he was covered by Wife's health insurance until October 18, 2019. He also explained that they had made no attempts to reconcile, took no vacations as a couple, and attended no social events as husband and wife. Husband testified, for example, that although they attended the same wedding five years before the hearing, they did not sit together. According to Husband, he cohabited with another woman for approximately six years after his separation from Wife.

{¶8} Wife also testified that the parties separated in February 2016. During the hearing, she maintained that the decision was not mutual, but she acknowledged that in her responses to Husband's requests for admissions, she admitted that it was mutual. Wife's testimony about the marital residence differed from Husband's testimony in some respects. According to her testimony, she did not change the locks. Instead, she testified that Husband broke the door down when she prevented him from entering and that the police told her to have the locks changed as a result. Wife testified she had provided some financial assistance to Husband over the years and that he had done the same. She recalled that the last assistance she received from Husband was in 2020. She agreed that they had not filed joint tax returns since 2016, and she testified that Husband did not participate in her recent Chapter 13 bankruptcy. Although her responses to Husband's requests for admissions admitted that they had not vacationed together, Wife testified that they had done so with their grandchildren. Wife testified that they attended a wedding, but she acknowledged that they did not sit together. According to her testimony, however, "[e]veryone

knew" they were still married. Wife testified that Husband was covered by her health insurance until she retired in 2019.

{¶9} The trial court noted that a significant amount of time had passed between the parties' separation in February 2016 and the date that Wife's divorce complaint was filed. The trial court concluded that although the parties' testimony differed in some respects, "[i]t was clear once [Wife] no longer carried [Husband] on her health insurance plan that the parties were each operating as a separate entity and did not consult each other regarding family decisions." Accordingly, the trial court determined that the de facto termination date was October 18, 2019. Although, as the trial court acknowledged, the parties' testimony differed at some points, both testified that their separation occurred in February 2016. They agreed that they lived separately without attempts to reconcile at least after 2017 and that their financial affairs were, for the most part, disentangled. Specifically, both testified that in October 2019, Husband was no longer covered by Wife's health insurance.

{¶10} Based on the parties' testimony, this Court cannot conclude that the trial court abused its discretion in reaching this decision. Wife's second assignment of error is overruled.

### ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED, ABUSED IT[S] DISCRETION AND COMMITTED REVERSIBLE ERROR WHEN IT DENIED [WIFE'S] MOTION FOR A DISTRIBUTIVE AWARD.

{¶11} In her first assignment of error, Wife has argued that the trial court erred by denying her motion for a distributive award due to Husband's alleged financial misconduct. This Court does not agree.

{¶12} When a spouse engages in financial misconduct including the concealment or nondisclosure of assets, a trial court may order a distributive award to compensate the offended

spouse. R.C. 3105.171(E)(4). "[F]inancial misconduct necessarily implicates wrongdoing such as one spouse's interference with the other's property rights or the offending spouse's profiting from the misconduct." *Tustin*, 2015-Ohio-3454, at ¶ 44 (9th Dist.), citing *Bucalo v. Bucalo*, 2005-Ohio-6319, ¶ 23-24 (9th Dist.). Some element of wrongful intent or scienter must be present. *Havrilla v. Havrilla*, 2014-Ohio-2747, ¶ 47 (9th Dist.).

{¶13} This Court reviews a trial court's determination of whether financial misconduct is present under a manifest-weight standard. *Young v. Young*, 2022-Ohio-2535, ¶ 7 (9th Dist.). "Accordingly, before reversing such a judgment, this Court 'must determine whether the trier of fact, in resolving evidentiary conflicts and making credibility determinations, clearly lost its way and created a manifest miscarriage of justice.'" *Id.*, quoting *Boreman v. Boreman*, 2002-Ohio-2320, ¶ 10 (9th Dist.). This Court will only reverse the trial court's determination "in the exceptional case, where the evidence presented weighs heavily in favor of the party seeking reversal . . . ." *Boreman* at ¶ 10.

{¶14} Wife filed a complaint for divorce on March 15, 2023. Her property affidavit, which she filed on the same date, explained that Husband had won a house that was worth $775,000. On March 31, 2023, Husband filed his property affidavit, which listed only the marital residence. He addressed the issue for the first time during the February 1, 2024, hearing on the de facto termination date when he explained that he won a house as the result of a charity raffle. Husband testified that the drawing was conducted on November 16, 2022, and that the house was going to be sold. During the hearing on Wife's motion for a distributive award, which commenced on May 14, 2024, Husband addressed the property again. He testified that although the raffle drawing occurred on November 16, 2022, construction of the house was not completed until June 2023. Husband explained that once construction was completed, he received notice that he had to

pay $217,000 in property taxes before the property could transfer to him. According to Husband, he obtained the money from an investor and took ownership of the property on September 1, 2023, subject to the investor's lien. Husband testified that he had an agreement with the investor that the property would be sold, with the investor to receive the amount of the initial investment plus sixty percent of the profits. Husband acknowledged that he did not amend his property affidavit, but he also explained that the raffle was public knowledge and that ownership of the property transferred after October 18, 2019.

{¶15} Both the charity raffle and the ultimate date on which Husband took possession of the property fell several years after the de facto date of termination of the parties' marriage. Although Husband did not amend his property affidavit, it is apparent that Wife knew about the raffle as early as the date on which she filed her complaint and property affidavit. Husband testified about the property during the hearing on his motion to determine a de facto termination date. There is no evidence in the record that demonstrates Husband acted in a manner calculated to interfere with Wife's property rights, and this Court observes that the burden of proof to demonstrate financial misconduct fell to the Wife. *See Havrilla*, 2014-Ohio-2747, at ¶ 47 (9th Dist.). This Court cannot conclude that this is an exceptional case in which the evidence presented weighs heavily in favor of Wife. *See Boreman* at ¶ 10. Wife's first assignment of error is, therefore, overruled.

### III.

{¶16} Wife's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Domestic Relations Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

---

JENNIFER HENSAL
FOR THE COURT

FLAGG LANZINGER, P. J.
CARR, J.
CONCUR.

APPEARANCES:

CHARLES TYLER, SR., Attorney at Law, for Appellant.

JEFFREY V. HAWKINS, Attorney at Law, for Appellee.